EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Marimar Pérez Riera<br><br>    Parte peticionaria<br><br>        v.<br><br>Consejo de titulares del Condominio Marymar Condado, Momentum Management, Inc.<br><br>    Parte recurrida | Certiorari<br><br>2017 TSPR 3<br><br>197 DPR ____ |

Número del Caso: CC-2015-0462

Fecha: 10 de enero de 2017

Tribunal de Apelaciones:

    Región Judicial de San Juan, Panel I

 Abogado de la parte Peticionaria:

    Lcdo. Michel J. Godreau Robles

 Abogado de la Parte Recurrida:

    Lcdo. Roberto A. Rivera Ruiz

Materia: Ley de Condominios: Cantidad de votos requerida por la Ley de Condominios para aprobar obras de mejora cuando se impone una derrama para costearlas.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marimar Pérez Riera

    Parte peticionaria

        v.

                       CC-2015-0462

Consejo de Titulares del
Condominio Marymar Condado,
Momentum Management, Inc.

    Parte recurrida

Opinión del Tribunal emitida por la Jueza Presidenta Oronoz Rodríguez

En San Juan, Puerto Rico, a 10 de enero de 2017.

Este caso nos permite abordar una controversia novedosa relacionada al régimen de propiedad horizontal. En particular, nos corresponde determinar qué cantidad de votos requiere la Ley Núm. 103 del 5 de abril de 2003, conocida como "Ley de Condominios", 31 LPRA secs. 1291 et seq. (Ley de Condominios) para aprobar obras de mejora cuando se impone una derrama para costearlas.

En virtud de los principios aplicables a nuestro régimen de propiedad horizontal y del historial legislativo de la Ley de Condominios, resolvemos que el Consejo de Titulares sólo puede aprobar obras de

mejora que impliquen la imposición de una derrama mediante el acuerdo unánime de los titulares.

I

El Condominio Marymar Condado (Condominio) tiene veintitrés titulares y está sometido al régimen de propiedad horizontal. El 25 de noviembre de 2014, la Junta de Directores del Condominio (Junta) circuló entre los titulares una convocatoria para celebrar una asamblea ordinaria que se llevaría a cabo el 16 de diciembre de 2014. La convocatoria detallaba que la agenda a discutirse incluiría lo siguiente:

> h) Discusión y aprobación de las siguientes derramas:
>> a) Derrama #1 Para llevar a cabo los siguientes siete proyectos:
>>> 1. Reparación de rampas en área de carga, junta fría y empozamiento [sic.] en niveles de estacionamiento - $2,200
>>> 2. Tiestos (2) para redondel frente a entrada - $803
>>> 3. Cambio de piso al Gimnasio - $4,782
>>> 4. Mejoras de Jardinería "Landscaping" - $8,695.
>>> 5. Mejoras al sistema de cámaras de seguridad - $7,081
>>> 6. Cambios a iluminación LED en áreas comunes- $11,161
>>> 7. Control de Acceso "Key/ Fob" (Puertas y Elevadores) - $12,431
>> b) Derrama #2- Mejoras al Salón de Actividades - $19,800.[1]

---

[1] La Sra. Marimar Pérez Riera, titular del Condominio y peticionaria en el recurso de autos, reconoce que el inciso (a)(1) sobre "[r]eparación de rampas en área de carga, junta fría y empozamiento [sic.] en niveles de estacionamiento" es un gasto necesario, no una mejora.

El 8 de diciembre de 2014, la Sra. Marimar Pérez Riera, quien es titular del apartamiento del último piso, le envió un correo electrónico al asesor legal y al Presidente de la Junta, así como al Administrador de Momentum Management Inc. (Momentum), agente administrador del Condominio.[2] Les expresó, entre otros asuntos, que tenían que obtener el consentimiento unánime de los titulares si se proponían aprobar una derrama para obras de mejora.

Así las cosas, la asamblea se efectuó en la fecha pautada y contó con la asistencia de once titulares, quienes aprobaron unánimemente todos los asuntos en agenda, incluyendo las derramas.[3] Cabe destacar que durante la asamblea se acordó también que el pago de las derramas formaría parte de la cuota de mantenimiento. En consecuencia, éste vencería el primer día de cada mes y su incumplimiento daría pie a la suspensión de los servicios de agua y electricidad.[4] El 17 de diciembre de 2014 se entregó copia del acta de la asamblea a los titulares y, poco después, la Junta comenzó a cobrar las derramas en las facturas de mantenimiento.

Oportunamente, la señora Pérez Riera presentó una querella contra el Consejo de Titulares del Condominio, su Junta de Directores y Momentum (en conjunto, parte

---

[2] También se comunicó por teléfono con el asesor legal de la Junta de Directores del Condominio (Junta).
[3] La señora Pérez Riera no asistió a la asamblea.
[4] Véase *Acta de la Asamblea Ordinaria del 16 de diciembre de 2014*, Apéndice, pág. 118.

demandada) ante el Departamento de Asuntos del Consumidor (DACO). En lo pertinente, alegó que, conforme con el Artículo 38(d)(3) de la Ley de Condominios, 31 LPRA sec. 1293b(d)(3), se requería el voto de todos los titulares del Condominio para aprobar las derramas dirigidas a costear las mejoras en cuestión.[5] Solicitó, pues, que el foro administrativo le ordenara a la parte demandada que se abstuviera de cobrarlas.

El DACO emitió una *Resolución sumaria* mediante la cual desestimó la querella presentada. Concluyó que cuando "se necesite aprobar una derrama para el financiamiento de cualquier tipo de obra, sea ésta extraordinaria, urgente o de mejora, sólo se necesitará [el] consentimiento mayoritario de [los presentes en una asamblea debidamente citada]".[6] Según el DACO, el requisito de aprobación de dos terceras (2/3) partes de la totalidad de los titulares al que se refiere el Artículo 38(d) (3), supra, aplica únicamente a aquellos casos en que se pretenda retirar dinero del fondo de reserva. Expresó que la Ley de Condominios detalla aquellos acuerdos que requieren la aprobación unánime o de dos terceras (2/3) partes de los

---

[5] Conviene tener presente que el Artículo 38(d)(3) de la Ley de Condominios, 31 LPRA sec. 1293b(d)(3) -medular para la controversia de autos- dispone lo siguiente:

> (3) Obras de mejoras.- En los condominios donde ubique por lo menos un apartamento dedicado a vivienda, las obras de mejora sólo podrán realizarse mediante la aprobación de la mayoría cualificada de dos terceras (2/3) partes de los titulares que a su vez reúnan las dos terceras (2/3) partes de las participaciones en las áreas comunes, *si existen fondos suficientes para costearlas sin necesidad de imponer una derrama.* Íd. (énfasis suplido).

[6] Véase, *Resolución del DACO*, Apéndice, pág. 73.

titulares y que los acuerdos no especificados pueden aprobarse por la mayoría de los presentes en la reunión particular que se celebre.[7]

La señora Pérez Riera presentó un recurso de revisión judicial ante el Tribunal de Apelaciones, foro que confirmó al DACO. Concluyó, en síntesis, que en este caso no se requería el aval de dos terceras (2/3) partes de los titulares. Esto pues, a su juicio, dicho requisito aplica únicamente cuando se utiliza dinero del fondo de reserva para costear las mejoras, mas no así cuando se impone una derrama. Según el foro apelativo intermedio, dado que no se afectó el fondo de reserva, "bastó el consentimiento mayoritario de la [a]samblea [o]rdinaria debidamente citada y celebrada para discutir el financiamiento de la[s] mejora[s]".[8]

Inconforme, la señora Pérez Riera presentó un recurso de *certiorari* ante este Tribunal. Sostuvo que, conforme con el Artículo 38 (d)(3) de la Ley de Condominios, supra, para aprobar obras de mejora se requiere el voto de dos terceras (2/3) partes de los titulares cuando existen fondos suficientes para costearlas sin necesidad de imponer una derrama. En cambio, cuando se incurre en una derrama para costear las mejoras, se requiere unanimidad.

Según la señora Pérez Riera, un análisis del historial legislativo de la Ley de Condominios y, específicamente,

---

[7] La señora Pérez Riera presentó una solicitud de reconsideración que, transcurridos quince días sin ser atendida por el DACO, fue denegada de plano.

[8] Véase, *Sentencia* del Tribunal de Apelaciones, Apéndice, pág. 11.

del Artículo 38, supra, apoya su contención. A tales fines, expuso que antes de la aprobación de la Ley de Condominios, se requería la unanimidad de votos para aprobar toda mejora. Esto precisamente para evitar que, en aras de costear este tipo de obras –que, por su naturaleza, no son necesarias-, una mayoría impusiera gastos adicionales a un titular. Así, la señora Pérez Riera señaló que el propósito del legislador al aprobar la Ley de Condominios fue "reducir el requisito estricto de la unanimidad cuando hubiesen fondos suficientes para costearlos. Correlativamente, se mant[uvo] el requisito de unanimidad cuando no hubiesen fondos suficientes para costear las obras de mejora y, por consiguiente, se [requiriera] imponer una derrama".[9]

La parte demandada presentó su alegato y adujo, en síntesis, que el Condominio contaba con fondos suficientes para costear las obras en cuestión. Asimismo, planteó que existe controversia sobre si las obras aprobadas con la derrama son gastos necesarios o mejoras.[10] También expresó que la oposición de la señora Pérez Riera era caprichosa por lo que, en virtud de las disposiciones del Artículo 42(b) de la Ley de Condominios, 31 LPRA sec. 1293f, no debía surtir efecto alguno.

---

[9] Véase, *Alegato de la parte peticionaria*, pág. 11.
[10] Se tienen por no puestos los planteamientos de la parte demandada relacionados a que en una asamblea extraordinaria, celebrada luego de que expidiéramos el *certiorari*, el Consejo de Titulares ratificó la aprobación de las derramas y catalogó como gastos necesarios las obras aprobadas.

Este Tribunal celebró una vista oral a la cual comparecieron las partes y discutieron sus respectivas posturas en cuanto a la controversia que nos ocupa. Con el beneficio de sus comparecencias, procedemos a resolver.

II

A.

La Ley de Propiedad Horizontal, Ley Núm. 104 del 23 de junio de 1958, según enmendada, 31 LPRA secs. 1291 et seq. (Ley de Propiedad Horizontal), se aprobó con el propósito de establecer un régimen jurídico que facilitara la vida en convivencia y propiciara la disponibilidad de viviendas en un área restringida de terreno. Exposición de Motivos de la Ley de Condominios. Véanse, además, Batista, Nobbe v. Jta. Directores, 185 DPR 206, 218 (2012); Consejo de Titulares v. Gómez Estremera, 184 DPR 407, 417 (2012); Rodríguez v. Junta de Directores I y II, 173 DPR 475, 480 (2008). Cabe destacar que la Ley de Propiedad Horizontal ha sido enmendada en múltiples ocasiones. El proyecto de enmiendas más sustancial y significativo de ésta fue introducido mediante la Ley de Condominios.

Entre las características fundamentales del esquema urbanístico que nos ocupa se encuentra "el disfrute del apartamiento como núcleo del régimen y de ahí la preservación del requisito de consentimiento unánime para toda obra o acción que afecte directamente su disfrute". Exposición de Motivos de la Ley de Condominios.

Una de las figuras principales del régimen de propiedad horizontal es el Consejo de Titulares, organismo que tiene personalidad jurídica propia, está integrado por todos los titulares y "constituye la autoridad suprema sobre la administración del inmueble". Íd. Véase además, Consejo Titulares v. Ramos Vázquez, 186 DPR 311, 326 (2012). Éste, en conjunto con la Junta de Directores y el Agente Administrador, tiene como deber principal orientar sus acciones "salvaguardando el principio de que el propósito del régimen de propiedad horizontal es propiciar el disfrute de la propiedad privada sobre el apartamiento y que la administración de las áreas y haberes comunes del edificio se realiza para lograr el pleno disfrute de este derecho". Exposición de Motivos de la Ley de Condominios. El Artículo 38 de la Ley de Condominios regula los deberes y facultades del Consejo de Titulares y, entre otros asuntos, dispone que corresponde a dicho organismo aprobar la ejecución de obras extraordinarias y mejoras y recabar fondos para su realización conforme con los criterios elaborados más adelante en la Ley. 31 LPRA sec. 1293b.

Vale señalar que, con el citado Artículo 38, supra, la Ley de Condominios introdujo una definición y diferenciación más rigurosa y clara entre aquellas obras que se consideran extraordinarias, urgentes y de mejora y estableció requisitos distintos para cada una. Véase Exposición de Motivos de la Ley de Condominios.

Así, según la Ley de Condominios, las obras extraordinarias son aquellas *de mantenimiento* no previstas en el presupuesto anual, que requieran el diez por ciento (10%) o más de dicho presupuesto o la imposición de una derrama para su ejecución. Artículo 38(d) de la Ley de Condominios, supra. Asimismo, son obras urgentes aquellas "cuya ejecución no pueda posponerse por *razones apremiantes de seguridad* o porque sea necesaria para la restitución de los *servicios esenciales*". Íd. (énfasis suplido). Debido a su carácter imperioso, tanto las obras extraordinarias como las urgentes pueden ser aprobadas por la mayoría de los titulares presentes en una asamblea extraordinaria convocada para atender el asunto específico. Íd.

De otra parte, según el Artículo 38(d), supra, las obras de mejora son aquellas obras permanentes que *no sean de mantenimiento*, "dirigida[s] a aumentar el valor o la productividad de la propiedad en cuestión o a proveer mejores servicios para el disfrute de los apartamientos o las áreas comunales". Nótese que estas últimas se distinguen de las primeras dos en que no son obras de mantenimiento ni mucho menos necesarias para el sostenimiento del condominio. En cambio, las obras de mejora van dirigidas al "lujo u ornato o [a la] mera conveniencia". A. Ventura-Traveset y González, Derecho de

<u>Propiedad Horizontal</u>, 275 (Editorial Bosch, Cuarta Edición, 1980).[11]

En aras de analizar la controversia de autos, pasemos a reseñar el desarrollo legislativo de la aprobación de mejoras –tipo de obras que nos ocupa– en nuestra Ley de Propiedad Horizontal. Esto, pues sabemos que es norma de hermenéutica que, "[a]l interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener". <u>Morell et al. v. Ojeda et al.</u>, 151 DPR 864, 877 (2000).

B.

Originalmente, conforme con la Ley de Propiedad Horizontal, se requería el voto unánime de los titulares para aprobar obras de mejora.[12] Lo anterior se desprendía de su Artículo 16, que expresaba lo siguiente:

---

[11] El tratadista Ventura-Traveset explica que, según la doctrina española, a las obras de mejora "no les es aplicable el régimen de mayoría". Ello, pues "en la obligación normal de contribuir sólo [deben] incluirse los gastos de conservación y reparación, y . . . ningún propietario [debe estar] obligado a satisfacer los gastos de las obras realizadas sin necesidad o exigencia que las justifique debidamente". A. Ventura-Traveset y González, <u>Derecho de Propiedad Horizontal</u>, 275 (Editorial Bosch, Cuarta Edición, 1980).

[12] Cabe destacar que la Ley Núm. 104 de 25 de junio de 1958, 31 LPRA secs. 1291 <u>et seq.</u>, (Ley de Propiedad Horizontal) tomó como punto de partida la Ley-Decreto Núm. 407 de 16 de septiembre de 1952 de la República de Cuba "por guardar ésta mayor consonancia [que otras legislaciones] con nuestro Derecho". <u>Bravman v. Consejo de Titulares</u>, 183 DPR 827, 841 (2011), citando a S.E. Casellas, <u>Comentarios y notas: legislación en torno a la nueva Ley de la Propiedad Horizontal</u>, 28 Rev. Jur. UPR 301 (1958-1959). No obstante, uno de los aspectos en que la legislación puertorriqueña se apartó de la cubana fue, precisamente, en la exigencia del consentimiento unánime de todos los titulares para toda obra que afectara los elementos comunes, salvo las necesarias. Alberto Ferrer, <u>Necesidad de reformar la Ley de Propiedad</u>

Las obras necesarias para la conservación del inmueble y para el uso eficaz de los elementos comunes serán acordadas por la mayoría de los titulares.

*Para toda obra que afecte los elementos comunes del inmueble [se] requerirá el consentimiento unánime de todos los titulares.* Véase, Artículo 16 de la Ley Núm. 104-1958 (énfasis suplido).[13]

El requisito estricto y absoluto de unanimidad para todo tipo de obras que no fueran necesarias, incluyendo las de mejora, fue objeto de críticas por parte de varios sectores del País.[14] Ello, principalmente porque permitía que "un titular [pudiera] caprichosamente frustrar el mejoramiento de la vida en comunidad en un gran número de inmuebles sometidos al [r]égimen de [p]ropiedad [h]orizontal en Puerto Rico, en contra de la voluntad de la inmensa mayoría de los restantes titulares". Alberto Ferrer, <u>Necesidad de reformar la Ley de Propiedad Horizontal de Puerto Rico</u> 532, ponencia presentada ante el Tercer Congreso Internacional de Derecho Registral y

---

<u>Horizontal de Puerto Rico</u> 532, ponencia presentada ante el Tercer Congreso Internacional de Derecho Registral y Notarial de Puerto Rico, San Juan, 1978.

[13] Claro está, según intimamos anteriormente, no fue sino hasta que se aprobó la Ley Núm. 103 del 5 de abril de 2003, conocida como "Ley de Condominios", 31 LPRA secs. 1291 <u>et seq.</u> (Ley de Condominios) que la Asamblea Legislativa definió y delimitó con claridad los tipos de obras susceptibles de aprobación en el régimen de propiedad horizontal. No obstante, se entendía que las obras de mejora, en tanto no eran necesarias, requerían el consentimiento unánime de todos los titulares. Véase, Michel Godreau, <u>El Condominio: El Régimen de Propiedad Horizontal en Puerto Rico</u>, 122 (Editorial Dictum, 1992).

[14] Vale señalar que esta discusión no es extraña a otras jurisdicciones. Tratadistas españoles, por ejemplo, han propuesto repensar el principio de la unanimidad, criterio clásico doctrinal para la alteración de elementos comunes. Véase Ventura-Traveset y González, <u>op. cit</u>, pág. 275, citando a M. Batlle Vázquez, <u>La propiedad de casas por pisos</u>, 108 (1954). No obstante, han puntualizado que "ello ha de ser con garantías para los condóminos. . . pues debe pensarse que no se puede forzar a modestos propietarios a afrontar empresas económicas superiores a sus fuerzas y con las que no se contaba al adquirir el piso". <u>Íd.</u>

Notarial de Puerto Rico, San Juan (1978). Años más tarde, conocedores de la materia señalaban que era necesario hacer un justo balance entre tales intereses de la comunidad de mejorar el inmueble y el interés fundamental en el contexto de la horizontalidad de proteger la propiedad individual y evitar la imposición de gastos innecesarios a los titulares.[15]

Así las cosas, posteriormente, mediante la Ley Núm. 153 del 11 de agosto de 1995 (Ley Núm. 153) la Asamblea Legislativa enmendó sustancialmente la Ley de Propiedad Horizontal. Entre los asuntos alterados mediante dicha legislación se encontraba el citado Artículo 16. La Exposición de Motivos de la Ley Núm. 153 explicó que "la forma en que están redactados los [a]rtículos [enmendados], los cuales exigen unanimidad de los titulares, []ha creado una parálisis que impide . . . un mejoramiento sustancial y desarrollo de los condominios existentes". Exposición de Motivos de la Ley Núm. 153.

Con tales propósitos, en lo pertinente, esta Ley eliminó el requisito de consentimiento unánime "para toda obra que afecte los elementos comunes del inmueble" y, en su lugar, añadió una disposición particular sobre la aprobación de obras de mejora en elementos comunes. Así, dispuso expresamente que "[l]as obras de mejora que afecten los elementos comunes del inmueble serán acordadas

---

[15] Véase Michel Godreau, op. cit., pág. 19, para una discusión sobre la reducción del requisito de la unanimidad dispuesto en la Ley de Propiedad Horizontal, sus problemáticas y los intereses involucrados.

por el setenta y cinco (75) por ciento de los titulares que a su vez representen el setenta y cinco (75) por ciento de participación en los elementos comunes". Artículo 1 de la Ley Núm. 153.

No obstante, un año después, se aprobó la Ley Núm. 43 del 21 de mayo de 1996 (Ley Núm. 43), "con el firme propósito de devolver al status anterior la Ley de Propiedad Horizontal, debido a la abrumadora solicitud de las diferentes partes afectadas e interesadas en dicha ley". Exposición de Motivos de la Ley Núm. 43. Esta Ley derogó en su totalidad la Ley Núm. 153, restableciendo así el requisito de la unanimidad para obras que "afect[aran]" los elementos comunes. Véase Rodríguez v. Junta de Directores I y II, supra, pág. 484 esc. 6.

En el 2003 se enmendó nuevamente la Ley de Propiedad Horizontal mediante la aprobación de la Ley de Condominios. Esta Ley introdujo el lenguaje vigente actualmente que dispone lo siguiente:

> En los condominios donde ubique por lo menos un apartamiento dedicado a vivienda, las obras de mejora sólo podrán realizarse mediante la aprobación de la mayoría cualificada de dos terceras (2/3) partes de los titulares que a su vez reúnan las dos terceras (2/3) partes de las participaciones en las áreas comunes, *si existen fondos suficientes para costearlas sin necesidad de imponer una derrama.* . . . Íd. (énfasis suplido).

Significa que, para aprobar obras de mejora en aquellos condominios que alberguen al menos un apartamiento residencial, de ordinario es indispensable la concurrencia de dos requisitos, a saber: (1) el voto de

una mayoría cualificada, esto es de dos terceras (2/3) partes de todos los titulares, y (2) que existan fondos suficientes para costearlas *sin necesidad de imponer una derrama*. Íd.

Según describe la Exposición de Motivos de la Ley de Condominios, con esta enmienda "se redu[jo] el número necesario de votos[] a dos terceras partes, para aprobar obras de mejora, siempre que existan fondos para realizarlas". Exposición de Motivos de la Ley de Condominios. El *Informe Conjunto* de las Comisiones de Vivienda, de Banca y Asuntos del Consumidor y de lo Jurídico del Senado sobre el P. del S. 1425 -que eventualmente se convirtió en la Ley de Condominios- arroja luz sobre la controversia de autos. En específico, respecto a la justificación de la enmienda que nos ocupa, el *Informe* explica que:

> [l]a liberalización del requisito de unanimidad para la realización de mejoras . . . ha sido un reclamo constante en el régimen. . . [L]a actual Ley no contempla que su realización pueda efectuarse con menos de la unanimidad. Por otro lado, *permitir la imposición de inversiones con la mera aprobación del gasto por una mayoría c[u]alificada puede acarrear grandes injusticias para aquellos titulares cuyos ingresos no les permitan afrontar el gasto cuantioso que una derrama de este tipo pueda representar. Por ello se propone que la inversión en un gasto de mejora sólo pueda imponerse mediante el voto de 2/3 partes de los titulares, si existen fondos suficientes en la reserva de forma que se haga innecesaria la imposición de una derrama. Correlativamente se dispone que deberá establecerse un fondo de reserva para estos fines. Informe Conjunto de las Comisiones de Vivienda, de Banca y Asuntos del Consumidor y de lo Jurídico sobre el P. del S. 1425, XIV*

Asamblea Legislativa (12 de noviembre de 2002)(énfasis suplido).[16]

Evaluado lo anterior, procedamos a resolver la controversia a la luz del derecho expuesto.

### III

En este caso el Consejo de Titulares aprobó dos derramas dirigidas a costear varias obras mediante el voto de once titulares de los veintitrés que componen el Condominio. La peticionaria, en desacuerdo con ese proceder, presentó oportunamente ante el DACO una querella para impugnar las actuaciones en controversia. No obstante, los foros inferiores determinaron que el escenario que nos ocupa únicamente requería el voto de la mayoría de los titulares que asistieron a la asamblea. Esto pues, según concluyeron, el requisito de mayoría cualificada al que se refiere el Artículo 38(d)(3) aplica solamente en aquellos casos donde sea necesario retirar fondos del fondo de reserva. Por los fundamentos que exponemos a continuación, resolvemos que los foros inferiores erraron al resolver así.

Como vimos, la Ley de Propiedad Horizontal originalmente requería el voto unánime de los titulares

---

[16] Conviene aclarar que originalmente el P. del S. 1425 proponía que el Artículo 38(d)(3) de la Ley de Condominios requiriera, en lo pertinente, la existencia de "fondos suficientes *en el fondo de reserva* para costear" las mejoras. Véase, P. del S. 1423, según radicado (énfasis suplido). No obstante, el texto aprobado por el Senado y eventualmente convertido en ley eliminó la frase "fondo de reserva" del artículo que nos ocupa. Véase XIV Diario de Sesiones de la Asamblea Legislativa (Senado) 31101 (2002). De esta forma, conforme con el texto aprobado y vigente de la Ley de Condominios, es necesaria la votación de una mayoría cualificada para aprobar obras de mejora siempre que "existan fondos suficientes", sea en el fondo de reserva o de otras fuentes, sin necesidad de imponer una derrama.

para aprobar obras de mejora. Este criterio fue objeto de enmienda en varias ocasiones hasta que, con la aprobación de la Ley de Condominios, se flexibilizó el requisito de unanimidad para ciertas circunstancias. Así, la Asamblea Legislativa "redu[jo] el número necesario de votos a dos terceras partes para aprobar obras de mejoras". Exposición de Motivos de la Ley de Condominios. Esta flexibilización pretendió adelantar el interés legítimo que pueda tener una mayoría de los titulares en hacer mejoras y aumentar el valor del Condominio. No obstante, el legislador limitó el poder de esa mayoría y puntualizó que ello aplicaría únicamente "cuando exist[ieran] fondos suficientes para costearlas". Íd.[17]

En atención a lo anterior, el Artículo 38(d)(3) de la Ley de Condominios, supra, si bien no lo dispone de forma expresa en su texto, claramente mantuvo el requisito de unanimidad para la aprobación de obras de mejora cuando no existen fondos suficientes para costearlas o cuando, según ocurre en el caso de autos, aun habiendo fondos suficientes se determina costearlas mediante la imposición de una derrama.[18] Esta interpretación es cónsona con el historial legislativo que hemos discutido y que demuestra indubitadamente que el legislador pretendió hacer un balance entre, por un lado, el interés de fomentar la

---

[17] Esto, ya sea en el fondo de reserva –que, valga la aclaración, fue creado precisamente para reducir la imposición de derramas- o en virtud de otras fuentes de financiamiento. Véase XIV Diario de Sesiones de la Asamblea Legislativa (Senado) 31619 (2003).

[18] Esto, claro está, en aquellos condominios que alberguen al menos un apartamiento residencial. Véase Artículo 38(d) de la Ley de Condominios, supra.

realización de mejoras dirigidas a aumentar el valor y la productividad del condominio y, por otro, la protección de los titulares frente a gastos a los que no consintieron. Véase *Informe Conjunto de las Comisiones de Vivienda, de Banca y Asuntos del Consumidor y de lo Jurídico sobre el P. del S. 1425*, XIV Asamblea Legislativa (12 de noviembre de 2002).

Contrario a lo resuelto por el DACO y por el Tribunal de Apelaciones, la aprobación de obras de mejora que requieran derramas no puede exigir meramente el voto de "la mayoría de los presentes en [una] asamblea".[19] Tal criterio es menos estricto que el dispuesto en el Artículo 38(d) para aquellos casos en los que existen fondos suficientes para costear las obras y que, por tanto, no implican un trastoque del patrimonio de los titulares. Téngase presente que la imposición de una derrama puede representar una carga onerosa para los titulares. Incluso, el incumplimiento de su pago podría acarrear la suspensión de los servicios de agua y luz o forzar la venta del apartamiento. Lo anterior sería irrazonable teniendo en cuenta que, según discutimos, los fines y la naturaleza de las obras de mejora son muy distintos a los de las obras extraordinarias y las urgentes.

Nótese también que, conforme con el Artículo 38-C de la Ley de Condominios, 31 LPRA sec. 1293b-3, para constituir *quorum* en una asamblea es suficiente con que a

---

[19] Véase, *Resolución del DACO*, Apéndice, pág. 73.

una primera convocatoria asistan una tercera (1/3) parte de los titulares y, si se trata de la segunda convocatoria, basta con los que asistan, sin importar si es un ínfimo número de titulares. Así, según advierte la señora Pérez Riera, avalar el criterio de los foros inferiores y aplicar el requisito de "mayoría de los presentes" a la controversia de autos permitiría que un número reducido de titulares tenga el poder de aprobar una derrama, vinculante para todos los demás, destinada a costear obras de mejora. Ello laceraría injustificadamente el derecho de los titulares a disfrutar de su propiedad privativa, principio fundamental de la Ley de Condominios. Véase Artículo 1-A de la Ley de Condominios.

En fin, la norma que pautamos protege a los titulares de condominios sometidos al régimen de propiedad horizontal al evitar que, sin su consentimiento, se les impongan gastos adicionales dirigidos a costear obras que, por su propia naturaleza, no son necesarias. Se trata, pues, de una lectura integral de la Ley de Condominios que toma en consideración el fin cardinal de la horizontalidad: viabilizar el disfrute de la propiedad individual.

Nuestra conclusión en nada impide la aprobación de obras de mejoras. Más bien, de acuerdo con lo pautado y conforme con el texto de la Ley, si el condominio no cuenta con los fondos suficientes, el Consejo de Titulares deberá hacer los ajustes presupuestarios necesarios para

costear este tipo de obras sin imponer una carga económica adicional, abrupta y no consentida a los titulares.

En este caso, de tratarse de obras de mejora —asunto sobre el cual no se ha desfilado prueba— se requería el consentimiento unánime de los titulares, en tanto se aprobaron derramas para costearlas.[20]

IV.

Por los fundamentos que anteceden, se revoca el dictamen recurrido y se devuelve el caso al DACO para que determine prontamente si las obras aprobadas constituyen mejoras o gastos necesarios. Conforme con lo aquí resuelto, el DACO deberá ordenar la devolución de las cantidades pagadas, si alguna, por la señora Pérez Riera en concepto de derramas por las obras que determine que son mejoras. Esto, restando las cantidades relacionadas a la "[r]eparación de rampas en área de carga, junta fría y empozamiento [sic.] en niveles de estacionamiento", la cual, según estipuló la señora Pérez Riera, es una obra de mantenimiento necesaria.

Se dictará sentencia de conformidad.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[20] La señora Pérez Riera elaboró otros dos señalamientos de error que, al ser innecesarios para disponer del recurso que nos ocupa, no serán atendidos.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marimar Pérez Riera

    Parte peticionaria

        v.

Consejo de Titulares del Condominio Marymar Condado, Momentum Management, Inc.

    Parte recurrida

CC-2015-0462

SENTENCIA

En San Juan, Puerto Rico, a 10 de enero de 2017.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca el dictamen recurrido y se devuelve el caso al DACO para que determine prontamente si las obras aprobadas constituyen mejoras o gastos necesarios. Conforme con lo aquí resuelto, el DACO deberá ordenar la devolución de las cantidades pagadas, si alguna, por la señora Pérez Riera en concepto de derramas por las obras que determine que son mejoras. Esto, restando las cantidades relacionadas a la "[r]eparación de rampas en área de carga, junta fría y empozamiento [sic.] en niveles de estacionamiento", la cual, según estipuló la señora Pérez Riera, es una obra de mantenimiento necesaria.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo