ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL X**

| | | |
|---|---|---|
| **MARILIA GARCÍA-RODRÍGUEZ PIMENTEL**<br>QUERELLANTE(S)-RECURRENTE(S)<br><br>V.<br><br>**JUNTA DE DIRECTORES CONDOMINIO SANTA GENOVEVA**<br>QUERELLADA(S)-RECURRIDA(S) | **KLRA202300610** | ***Revisión de Decisión Administrativa*** procedente del Departamento de Asuntos del Consumidor<br><br>Civil Núm.:<br>**C-SAN-2022-0011705**<br><br>Sobre:<br>Ley de Condominios |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente.

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 11 de abril de 2024.

Comparece ante este Tribunal de Apelaciones, la señora **MARILIA GARCÍA-RODRÍGUEZ PIMENTEL** (señora **GARCÍA-RODRÍGUEZ PIMENTEL**) mediante una *Revisión de Decisión Administrativa* incoada el 28 de noviembre de 2023. En su recurso, nos solicita que revisemos la *Resolución* decretada el 27 de octubre de 2023 por el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)**.[1] Mediante esta decisión administrativa, entre otras cosas, se declaró *no ha lugar* la *Querella*, y ordenó el cierre y archivo del caso.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

### - I -

El 26 de julio de 2022, la señora **GARCÍA-RODRÍGUEZ PIMENTEL** instó una *Querella* ante el **DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO)**.[2]

---

[1] Este dictamen administrativo fue notificado y archivado en autos el 31 de octubre de 2023. Sin embargo, el 1 de noviembre de 2023, se depositó en el servicio postal (matasello). Véase Apéndice de la *Revisión de Decisión Administrativa,* págs. 1- 7.
[2] Véase Apéndice de la *Revisión de Decisión Administrativa*, págs. 8- 16.

Número Identificador: SEN2024_____

En su reclamación, alegó que la **JUNTA DE DIRECTORES CONDOMINIO SANTA GENOVEVA (JUNTA)** no puede disponer de elementos comunes generales sin la aprobación unánime del **CONSEJO DE TITULARES (CONSEJO)**; obstaculizó el paso y limitó el acceso a la azotea para no quitar los compresores puestos ilegalmente.

El 10 de agosto de 2022, se celebró una Asamblea Extraordinaria en el **CONDOMINIO SANTA GENOVEVA (CONDOMINIO)**.[3] La Asamblea Extraordinaria fue pautada para dialogar sobre: (i) actualización del Reglamento del Condominio para uniformar ventanas, rejas, localización y tapas de aires acondicionados; (ii) finanzas (ingresos y gastos rutinarios así como mejoras capitales); (iii) uso de azotea (instalación de aires acondicionados en azotea-techo 5A); (iv) modernización de bomba de agua; y (v) atender problema de espacios de estacionamiento. El 29 de agosto de 2022, se notificó el *Acta de Asamblea Extraordinaria*.[4]

Posteriormente, con fecha de 10 de octubre de 2022, el **CONSEJO** presentó su *Contestación a la Querella* y *Moción Sometiendo Prueba Documental, Testigos y Solicitud de Orden de Cese y Desista Comportamiento Impropia, Hostigante e Improcedente de la Querellante*.[5] La señora **GARCÍA-RODRÍGUEZ PIMENTEL** presentó una *Querella Enmendada* fechada 22 de noviembre de 2022.[6] Luego, el **CONSEJO** presentó su *Contestación a Querella Enmendada* cuya fecha es 10 de febrero de 2023.[7]

El 11 de julio de 2023, se celebró la audiencia administrativa mediante videoconferencia. Finalmente, el 27 de octubre de 2023, **DACO** emitió su *Resolución* formulando las siguientes determinaciones de hechos:

1. La querellante es titular del apartamento 1-A del Condominio Santa Genoveva mediante Escritura de Compraventa e Hipoteca otorgada el 30 de agosto de 2018 ante la notario Miriam Meseguer Berríos.

---

[3] El 15 de julio de 2022, se remitió mediante correo electrónico la convocatoria para dicha Asamblea. *Íd.*, págs. 36- 55.
[4] *Íd.*, págs. 56- 58.
[5] *Íd.*, págs. 23- 30.
[6] *Íd.*, págs. 17- 22.
[7] *Íd.*, págs. 31- 35.

2. El Condominio Santa Genoveva se encuentra sometido al régimen de propiedad horizontal.

3. El 10 de agosto de 2022 se celebró en el Condominio Santa Genoveva una asamblea extraordinaria. Entre los asuntos llevados ante el Consejo de Titulares se encontraban restringir el uso y acceso hacia la azotea y el estacionamiento.

4. La querellante asistió a la asamblea el 10 de agosto de 2022. Habiendo comenzado la asamblea, la querellante recibió una llamada de su hija informándole sobre una situación de salud del hijo de la querellante quien reside con esta y que requería su presencia. Debido a lo anterior, la querellante tuvo que retirarse de la reunión y no estuvo presente al momento en que se tomó la votación referente al asunto del estacionamiento.

5. A juicio de este Departamento, la querellante tuvo una razón justificada para ausentarse de la asamblea, por lo que se declaró no ha lugar una moción de desestimación presentada por la parte querellada basada en que, por haberse ausentado de la asamblea, la querellante no podía impugnarla.

6. En la azotea del Condominio Genoveva se encuentran instaladas máquinas de aires acondicionados pertenecientes al apartamento PH. En la asamblea celebrada el 10 de agosto de 2022, el Consejo de Titulares aprobó que el acceso a la azotea fuese limitado a quienes prestan servicios y dos titulares quienes darán acceso en caso de emergencia. La querellante, quien estuvo presente para ese momento, votó en contra de restringir el acceso a la azotea.

7. La razón para restringir el acceso al área de la azotea, se debe a que el Consejo de Titulares invirtió en la impermeabilización del techo con Danosa y el caminar sobre este provocaría que se dañe y pierda la garantía.

8. Además, en la azotea se encuentran instalados unos compresores de aire pertenecientes al apartamento 5A. Cuando la querellante adquirió su apartamento, los compresores de aire ya se encontraban en el área de la azotea. En asamblea celebrada en el año 2009, se le dio la oportunidad a todos los titulares interesados que quisieran tener una unidad de aire en la azotea, lo pudieran hacer siendo responsabilidad de cada uno llevar la tubería necesaria hasta el techo.

9. En el Condominio Santa Genoveva solo hay cinco (5) estacionamientos para cinco (5) apartamentos. Los restantes seis (6) apartamentos utilizan como espacios de estacionamiento la vía de rodaje desde hace más de quince años.

10. En la asamblea también se aprobó dejar los estacionamientos como se encuentran actualmente, permitiendo así que los apartamentos que no tienen espacios asignados continúen utilizando esa área para estacionarse. Al momento de llegar a esa votación, la querellante tuvo que abandonar la asamblea, por las razones antes expuestas.

11. Toda vez que las áreas de rodaje son un elemento comunal, esos espacios de estacionamiento se alquilan a los titulares cuyos apartamentos no tienen asignados, mediante escritura matriz, estacionamientos.

En desacuerdo con esa determinación administrativa, el 28 de noviembre de 2023, la señora **GARCÍA-RODRÍGUEZ PIMENTEL** entabló ante este Tribunal de Apelaciones un recurso intitulado *Revisión de Decisión Administrativa.* En el mismo, señala el(los) siguiente(s) error(es):

Erró el Honorable DACO a través de su Juez Administrativo Lcda. Christine Auger Pinzón, al declarar No Ha Lugar la Querella y concluir que los acuerdos tomados por el Consejo de Titulares en la Asamblea del 10 de agosto de 2022 y las acciones llevadas a cabo por su Junta de Directores con posterioridad no son ilegales, ni contravienen con lo dispuesto en la legislación vigente en cuanto a la votación unánime para cambiar el uso de áreas comunales pertenecientes a todos los titulares, además considerar hechos en su Resolución que no fueron parte de la Vista Administrativa, ni se acompañaron en evidencia en el récord administrativo o que son contradictorios con la convocatoria y celebración de la Asamblea Extraordinaria y por último no evaluar si las acciones impugnadas infringen con factores de la convivencia día a día de la querellante-recurrida y le son gravemente prejudiciales no tan solo a ella, sino a la comunidad de titulares.

El 12 de diciembre de 2023, pronunciamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de treinta (30) días para presentar su(s) alegato(s) en oposición al recurso a la **Junta de Directores Condominio Santa Genoveva**. Días después, el 18 de diciembre de 2023, el **Consejo de Titulares** y/o la **Junta de Directores del Condominio Santa Genoveva** presentaron *Moción de Desestimación por Incumplimiento con el Reglamento del Tribunal de Apelaciones*. En síntesis, señalaron la inobservancia de la Reglas 66 y 76 del Reglamento del Tribunal de Apelaciones.

El 4 de enero de 2024, el **Consejo de Titulares** y/o la **Junta de Directores del Condominio Santa Genoveva** presentaron su *Alegato en Oposición*. A los pocos días, el 9 de enero de 2024, este foro revisor dictaminó *Resolución* concediendo un plazo perentorio de diez (10) días para exponer posición respecto a la solicitud de desestimación del recurso a la señora **García–Rodríguez Pimentel**. El 19 de enero de 2024, la señora **García-Rodríguez Pimentel** presentó su *Moción en Cumplimiento de Orden y en Oposición a Moción de Desestimación por Incumplimiento con el Reglamento del Tribunal de Apelaciones por la Parte Querellada*.

Así las cosas, el 24 de enero de 2024, este foro apelativo intimó *Resolución* declarando *no ha lugar* la solicitud de desestimación.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición

de adjudicar. Puntualizamos las normas de derecho pertinentes a las(s) controversia(s) planteada(s).

- II -

## A. Revisión Administrativa

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[8] Su sección 4.1 instituye la revisión judicial por este Tribunal de Apelaciones de las determinaciones finales de las agencias.[9]

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[10] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[11] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[12]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[13] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[14]

---

[8] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[9] 3 LPRA § 9671.
[10] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).
[11] *Otero v. Toyota*, 163 DPR 716 (2005).
[12] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).
[13] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625- 626 (2016); *García Reyes v. Junta Examinadora*, 173 DPR 870, 891 (2008).
[14] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[15] Particularmente, concretó las normas básicas sobre el alcance de la revisión judicial al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la revisión de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[16]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad.[17] La *Evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión.[18] Debido a la presunción de regularidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción.[19] Para ello "tiene que

---

[15] *Torres Rivera v. Policía de PR, supra.*
[16] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud*, 210 DPR 79 (2022).
[17] *Rolón Martínez v. Caldero López*, 201 DPR 26, 36 (2018).
[18] *Otero v. Toyota*, supra, pág. 728.
[19] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).

demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[20] A esto se le conoce como la norma de la *evidencia sustancial*, con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.[21] Por lo tanto, aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[22]

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[23] Aun así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[24]

En suma, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[25] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[26]

### B. Ley de Condominios

El propósito de la *Ley de Condominios de Puerto Rico* es promover construcciones detalladas y reguladas a fin de que familias pudiesen habitar

---

[20] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[21] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003).
[22] *Íd.*
[23] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[24] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).
[25] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 893 (2008).
[26] *Capó Cruz v. Junta de Planificación*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo, supra.*

áreas urbanas densamente pobladas donde el valor de las viviendas fuese elevado.[27] No solo se les brinda accesibilidad sino la oportunidad de obtener un hogar propio y al mismo tiempo un mejor aprovechamiento de terrenos.[28] En ese sentido, es reconocido que en Puerto Rico existe una política pública a los efectos de estimular la utilización de terrenos y la construcción de condominios que se rijan por el régimen de la propiedad horizontal.[29]

Ahora bien, en el ejercicio y reclamo de sus derechos, los titulares actuarán conforme a los principios de la buena fe, de la prohibición de ir en contra de sus propios actos y la del abuso del derecho.[30] Así pues, el dueño o titular de un apartamento sometido al régimen de propiedad horizontal tendrá un derecho exclusivo a su propiedad y a una participación con los demás titulares en los elementos comunes del inmueble. Tal participación será el equivalente al porcentaje que represente la superficie de la totalidad de apartamentos en el inmueble.[31] El propio estatuto de propiedad horizontal define lo que constituye elementos comunes.[32]

El Artículo 39 (10) de la *Ley de Condominios de Puerto Rico* expresa que "[e]l adquirente de un apartamento **acepta la condición manifiesta de los elementos comunes del condominio en la forma en que éstos se encuentren físicamente al momento de adquirir. A este adquirente se le atribuirá el conocimiento de los cambios manifiestos que existan en el inmueble para todos los efectos de la tercería registral**".[33]

El Director o la Junta de Directores constituye el órgano ejecutivo de la comunidad de titulares. El Artículo 53 de la *Ley de Condominios de Puerto Rico* expone los poderes y deberes del Director o Junta de Directores del

---

[27] Ley Número 129 de 16 de agosto de 2020, según enmendada. 31 LPRA § 1921.
[28] 31 LPRA § 1921a; Véase, además *Arce v. Caribbean Construction Corp.*, 108 DPR 225 (1978).
[29] *Maldonado v. Consejo de Titulares*, 111 DPR 427 (1981).
[30] 31 LPRA § 1921a.
[31] 31 LPRA § 1921h.
[32] (j) **Elementos comunes** - Son los elementos que no son susceptibles de propiedad individual por los titulares y sujetos a un régimen de indivisión forzosa. (k) **Elementos comunes limitados** – Son elementos comunes que se destinen al servicio de más de un titular con exclusión de los demás, tales como pasillos, escaleras y ascensores especiales, servicios sanitarios comunes a los apartamentos de un mismo piso y otros análogos. Véase 31 LPRA § 1921b (j) y (k).
[33] 31 LPRA § 1922k (10). (énfasis nuestro).

condominio. En su inciso (g) se enuncia: "[a]tender a la conservación del inmueble y disponer las reparaciones ordinarias, **conforme dispone el presupuesto anual aprobado por el Consejo de Titulares** y en cuanto a las extraordinarias, adoptar las medidas necesarias previa aprobación del Consejo de Titulares".[34]

Nuestro Tribunal Supremo dictaminó que cuando una Junta de Directores identifique problemas que conlleven mejoras significativas de los elementos comunes de los edificios o condominios, se requiere la aprobación unánime para efectuar esas mejoras.[35] Empero, ese requisito de unanimidad será necesario cuando no existan fondos suficientes para costear las obras o cuando existiendo los fondos se determina costearlas mediante la imposición de una derrama.[36]

Asimismo, el Artículo 65 de la *Ley de Condominios de Puerto Rico* dispone sobre la impugnación de acciones u omisiones de la Junta de Directores. En específico, establece:

> Las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador así como los acuerdos del Consejo de Titulares podrán ser impugnados por los titulares en los siguientes supuestos:
> a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;
> b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;
> c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.[37]
> Por otro lado, el Artículo 66 de la *Ley de Condominios de Puerto Rico*

establece lo siguiente:[38]

> El Departamento de Asuntos del Consumidor [(DACo)] tendrá una División Especial de Adjudicación de Querellas de Condominios, para atender todo lo relacionado a todo condominio en el que exista por lo menos un apartamento dedicado a vivienda. El Secretario tendrá la capacidad de nombrar el personal necesario para la pronta atención de las querellas presentadas por los titulares de apartamentos al amparo de esta Ley contra el Consejo de Titulares o el Agente Administrador, o por la Junta de Directores al amparo de aquellas leyes especiales aplicables. [...]

---

[34] 31 LPRA § 1922y (g). (énfasis nuestro).
[35] *Pérez Riera v. Con. Tit. Cond. Marymar*, 197 DPR 197 (2017).
[36] Íd.
[37] 31 LPRA § 1923j.
[38] 31 LPRA § 1923k.

Por ende, la *Ley de Condominios de Puerto Rico* le otorga al **DACo** la facultad atender las querellas y adjudicar las acciones de impugnación interpuestas por los titulares de un condominio.

- III -

La señora García–Rodríguez Pimentel punteó en su *Revisión de Decisión Administrativa* que el **DACo** erró al declarar *no ha lugar* su *Querella* al concluir que los acuerdos tomados por el Consejo de Titulares (Consejo) son legítimos. Específicamente, la señora García–Rodríguez Pimentel señaló que el Consejo y la Junta de Directores del Condominio Santa Genoveva (Junta) están impedidos de tomar decisiones que afecten la variación de elementos comunes o generales del complejo de viviendas sin el acuerdo unánime de los titulares. Indicó, además, que las decisiones tomadas por el Consejo y la Junta perjudican los intereses de los titulares. Particularmente, la señora García–Rodríguez Pimentel cuestionó la variación y la restricción de acceso a la azotea del Condominio Santa Genoveva; los detalles del presupuesto para realizar mejoras; así como la creación y distribución de nuevos estacionamientos.

El Consejo y la Junta plantearon que es incorrecto que en la Asamblea Extraordinaria se haya decidido variar el uso de la azotea como área común o llegado a un acuerdo para adjudicar nuevos estacionamientos en el área del rodaje del condominio. Por ende, la *Resolución* emitida por **DACo** es consistente con el derecho.

El acta de la Asamblea Extraordinaria precisa que: (1) el Consejo reconoció que existe controversia respecto al uso de la azotea y los compresores de aire acondicionado; (2) la restricción de acceso a la azotea se debió a que el Consejo invirtió en la impermeabilización del techo y el caminar sobre el mismo provocaría que se dañe y, en consecuencia, la pérdida

de la garantía; y (3) la votación del **Consejo** sobre los estacionamientos consistió en ratificar su uso.[39]

Ciertamente, según la *Ley de Condominios de Puerto Rico,* la azotea es un elemento común sujeto a la aprobación mayoritaria de los titulares para efectuar mejoras.[40] Ello implica que, toda otra obra que afecte en forma adversa los elementos comunes del inmueble requerirá el consentimiento de dos terceras partes (2/3) de los titulares. En el caso de marras, cinco (5) de los (9) nueve titulares del Condominio Santa Genoveva votaron a favor de la restricción de acceso a la azotea para preservar su mantenimiento. En consecuencia, la decisión guarda armonía con lo requerido por la legislación. La *Ley de Condominios de Puerto Rico* es clara e implanta que el **requisito de unanimidad** para la toma de decisiones respecto a mejoras es necesario cuando no existen fondos suficientes para costearlas.[41]

Por otro lado, la configuración del estacionamiento del condominio ha sido la misma desde hace quince (15) años. Al momento en que la señora **García–Rodríguez Pimentel** adquirió su apartamento aceptó tal distribución.[42] En la Asamblea Extraordinaria, se aprobó mantener el *status* de los estacionamientos y el uso del rodaje.[43]

La señora **García–Rodríguez Pimentel** no logró rebatir la presunción de corrección que cobija las determinaciones administrativas. Tampoco hallamos indicador alguno que vislumbre que el **Consejo** y la **Junta** hayan actuado de manera arbitraria, ilegal o irrazonable, o sus acciones constituyan un abuso de discreción. Al contrario, advertimos que del expediente apelativo emana la existencia de suficientes elementos que nos llevan a colegir que la decisión administrativa está sustentada y/o avalada por *evidencia sustancial*.

---

[39] Véase Apéndice de *Revisión de Decisión Administrativa*, págs. 36 – 58.
[40] 31 LPRA § 1921q.
[41] *Pérez Riera v. Con. Tit. Cond. Marymar, supra.* (énfasis nuestro).
[42] El 30 de agosto de 2018, se otorgó la *Escritura de Compraventa e Hipoteca* mediante la cual compró su apartamento (1-A).
[43] La aprobación por mayoría fue de siete (7) votos a favor y uno (1) en contra.

No subsiste razón alguna, de hecho, o de derecho, que nos persuada a intervenir y variar la determinación impugnada. Asimismo, de la *Revisión de Decisión Administrativa* entablada tampoco se desprende alguna otra prueba para rebatir la presunción de corrección que cobija el dictamen administrativo. Cónsono con lo anterior, somos del criterio de que la *Resolución* decretada por el **DACo** fue una apropiada. Así pues, brindamos la deferencia al organismo administrativo por su *expertise*; y nos abstenemos de inmiscuir dado que su decisión es una razonable.

- **IV** –

Por los fundamentos antes expuestos, ***confirmamos*** la *Resolución* decretada el 27 de octubre de 2023 por el **Departamento de Asuntos del Consumidor (DACo)** en la cual se declaró no ha lugar la *Querella*.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones