ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **MATTHEW JOHN GAVIN INCLÁN Y OTROS** <br> DEMANDANTE(S)-RECURRIDA(S) <br><br><br> V. <br><br><br> **EVA RUTH MARRERO PAGÁN Y OTROS** <br> DEMANDADA(S)-PETICIONARIA(S) | **KLCE202401109** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN** <br><br> Caso Núm. **BY2024CV02649** (701) <br><br> Sobre: <br> Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

**R E S O L U C I Ó N**

En San Juan, Puerto Rico, hoy día 16 de diciembre de 2024.

Comparece ante este Tribunal de Apelaciones, **ESPLENDOR SERVICE GROUP (ESPLENDOR)** mediante *Certiorari* instado el 15 de octubre de 2024. En su recurso, nos solicita que revisemos la *Resolución* promulgada el 30 de julio de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.[1] Mediante la referida determinación, el foro *a quo* declaró no ha lugar la *Moción en Solicitud de Desestimación Bajo la Regla 10.2 de Procedimiento Civil* presentada el 13 de junio de 2024 por **ESPLENDOR**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

**- I -**

El 9 de mayo de 2024, los señores **MATTHEW GAVIN INCLÁN** y **GABRIELA ALEXANDRA GORBEA FUXENCH** (señores **GAVIN-GORBEA**) interpusieron una *Demanda* sobre daños y perjuicios, y remedios provisionales al palio de la Regla 56 de las de Procedimiento Civil de 2009.[2] Esencialmente, los señores

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 30 de julio de 2024. Apéndice del *Certiorari*, págs. 4- 8.
[2] *Íd*., págs. 9- 30. El señor **GAVIN INCLÁN** es titular del apartamento A-108 en Ridge Top Luxury Apartments sita en el municipio de Guaynabo.

**GAVIN-GORBEA** reclamaron que en o para el 3 de enero de 2023, se percataron de una acumulación excesiva de humedad y filtración de agua en el techo y paredes del baño del cuarto principal (*Master Room*), que posteriormente se extendió al baño de visita provocando el desprendimiento de pintura del techo y paredes. Además, hallaron manchas de moho y hongo.[3] Ante esta situación, ese mismo día, el señor **GAVIN INCLÁN** remitió un correo electrónico a la señora Xiomara Victoria, asistente administrativo de la compañía Mi Condominio PR LLC, administrador del CONDOMINIO RIDGE TOP LUXURY APARTMENTS (CONDOMINIO), y la Junta de Directores, informándoles sobre la situación de la humedad en su propiedad. En tal comunicación electrónica solicitó orientación sobre el procedimiento a seguir para remediar con premura la condición e incluyó fotos de las filtraciones de agua.

Así las cosas, lograron coordinar una inspección física pautada para el 19 de enero de 2023. En esa fecha, la compañía Today Plumbing, contratada por la Administración del Condominio, realizó una inspección física del apartamento A-108. La señora **EVA R. MARRERO PAGÁN** (señora **MARRERO PAGÁN**) no autorizó la entrada a su apartamento: A-110. Entonces, el 23 de marzo de 2023, se efectuó la inspección de los apartamentos A-108 y A-110, y se redactó un informe.[4]

Durante el mes de junio 2023, la señora **MARRERO PAGÁN**, quien se encontraba inconforme con el informe de Today Plumbing, contrató al señor Radamés Ortiz Peña, plomero (plomero Ortiz Peña), para evaluar los reclamos. El 17 de agosto de 2023, el plomero Ortiz Peña redactó un informe sobre su inspección ocular. Al evaluar el área, indicó que era necesario realizar varias pruebas en el área de la ducha en el apartamento A-110 e

---

[3] Los señores **GAVIN-GORBEA** puntearon que el desprendimiento de la pintura del techo y de las paredes continuaron siendo continuas, interrumpidas y progresivas al punto de tan reciente como agosto 2024. Apéndice de la *Moción en Cumplimiento de Orden- Mostrando Causa*, págs. 1- 29.
[4] En la aludida inspección estuvieron presentes el señor Gavin Inclán, la administradora, la compañía Today Plumbing y la entonces presidenta de la Junta de Directores, la señora Ninoshka Hernández. *Íd*., pág. 7.

inspeccionar el apartamento A-108 antes y después de ejecutar la pruebas. Tal informe discrepó de los hallazgos del perito de Today Plumbing.

Ante ello, en diciembre de 2023, los señores **GAVIN-GORBEA** convinieron con el señor José J. Morales, perito plomero, para que examinara las tuberías. El 27 de diciembre de 2023, el perito Morales formuló un informe e imputó las filtraciones al sello de piso de los inodoros del apartamento A-110.

Luego de varios incidentes procesales, el 20 de mayo de 2024, se celebró una audiencia presencial en la cual se coordinó otra inspección para el 23 de mayo de 2024 y audiencia para el 4 de junio de 2024.[5] A los pocos días, el 3 de junio de 2024, los señores **GAVIN-GORBEA,** así como el **CONSEJO DE TITULARES DE RIDGE TOP LUXURY APARTMENTS (CONSEJO DE TITULARES)** presentaron *Moción Conjunta Informativa y en Solicitud de Recalendarización de Vista*. Expusieron que se habían realizado unas pruebas; quedaban pruebas adicionales; y el señor Salvador Rodríguez (plomero), estaría de viaje.[6] Ese día, el foro primario dejó sin efecto la audiencia y la recalendarizó para el 18 de junio de 2024.[7] Así como, decretó *Orden* concediendo diez (10) días para ofrecer tres (3) fechas hábiles y a los señores **GAVIN-GORBEA** para exponer posición sobre desestimación de *injunction*.[8]

El 13 de junio de 2024, **ESPLENDOR** presentó *Moción en Solicitud de Desestimación Bajo la Regla 10.2 de Procedimiento Civil*.[9] Al día siguiente, el 14 de junio de 2024, se pronunció *Orden* para que los señores **GAVIN-GORBEA** presentaran su posición en veinte (20) días.[10] Subsiguientemente, se dictó *Orden* dejando sin efecto la audiencia pautada para el 18 de junio de 2024 y reseñalando para el 6 de agosto de 2024.[11]

---

[5] Apéndice del *Certiorari*, págs. 34-35.
[6] En la misma fecha, la señora **MARRERO PAGÁN** presentó *Oposición a Moción Conjunta Informativa y en Solicitud de Recalendarización de Vista*. *Íd.*, págs. 45- 64.
[7] *Íd.*, pág. 42.
[8] *Íd.*, pág. 65.
[9] *Íd.*, págs. 74- 105.
[10] *Íd.*, pág. 107.
[11] *Íd.*, pág. 108.

El 17 de julio de 2024, los señores **GAVIN-GORBEA** presentaron su *Oposición a Moción de Desestimación*.[12]

Más tarde, el 30 de julio de 2024, ante múltiples escritos de las partes, el foro primario profirió *Orden* apercibiendo que, de no ponerse de acuerdo, se estaría nombrando un perito plomero vinculante para todas las partes quien se encargaría de ejecutar las pruebas necesarias para detectar las filtraciones, a cuenta y cargo de todas las partes.[13] Juntamente, se decretó la *Resolución* recurrida.

En desacuerdo con la determinación, el 20 de agosto de 2024, **ESPLENDOR** presentó *Moción en Solicitud de Reconsideración*.[14] En esa misma fecha, mediante *Orden* se les concedió a los señores **GAVIN-GORBEA** un término de veinte (20) días para mostrar su posición.[15] Luego de dos (2) prórrogas, el 18 de septiembre de 2024, finalmente presentaron su *Oposición a Moción en Solicitud de Reconsideración*. En consecuencia, el mismo día, se intimó *Resolución* declarando no ha lugar la solicitud de reconsideración.[16]

Insatisfecho, el 15 de octubre de 2024, **ESPLENDOR** acudió ante este foro revisor punteando el(los) siguiente(s) error(es):

> Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al declarar No Ha Lugar la desestimación solicitada, cuando al momento en que Esplendor comienza sus servicios como Administrador del Condominio Ridge Top, el problema de filtraciones reportado por los demandantes ya llevaba nueve (9) meses siendo atendido por la Junta de Directores de Condominio, la pasada administración, los titulares de los apartamentos envueltos en la controversia, y ya habían peritos plomeros de las partes concernidas realizando pruebas para identificar la causa de las filtraciones en el apartamento de los demandantes, por lo cual la función de Esplendor como nuevo administrador estaba limitada únicamente a ejecutar las coordinaciones para las inspecciones de los plomeros que la Junta de Directores le solicitara, de conformidad con la Ley de Condominios, el Reglamento del Condominio y el contrato suscrito entre el condominio y Esplendor.

> Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al declarar que podría haber causa de acción contra el administrador actual del condominio, sin que exista una sola alegación de acto u omisión de su parte que causara los daños reclamados, y contradictoriamente, declarar No Ha Lugar la

---

[12] *Apéndice* del Certiorari, págs. 111-236.
[13] *Íd.*, págs. 237-238.
[14] *Íd.*, págs. 251-255.
[15] *Íd.*, págs. 256-257.
[16] El 7 de octubre de 2024, se presentó *Demanda Enmendada*.

desestimación solicitada por falta de parte indispensable, cuando la parte demandante omitió acumular en la demanda a la pasada administración del condominio, quien manejó la situación de las filtraciones en el apartamento de los demandantes desde que fue reportado por primera vez en enero 2023, hasta finalizar servicios en septiembre 2023, por lo cual, si el foro de instancia determinó que la administración podría en su día tener responsabilidad por lo sucedido, la pasada administración es parte indispensable cuyos intereses podrían verse afectados, y procedía la desestimación solicitada.

El 16 de octubre de 2024, dictaminamos *Resolución* concediendo un término de diez (10) días al señor **GAVIN INCLÁN Y OTROS**, y la señora **MARRERO PAGÁN Y OTROS** para exponer su posición sobre el recurso. El 28 de octubre de 2024, los señores **GAVIN-GORBEA** presentaron *Moción en Cumplimiento de Orden – Mostrando Causa*. Al día de hoy, no ha comparecido la señora **MARRERO PAGÁN Y OTROS.**

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de **ESPLENDOR**, así como los señores **GAVIN-GORBEA**, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II –

- A - *CERTIORARI*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[17] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[18]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[19] Empero, el ejercicio de la discreción concedida "no implica la potestad de

---

[17] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[18] *Íd.*
[19] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).

actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[20]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[21] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[22] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[23]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[24]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[25] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;

---

[20] *Íd.*

[21] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*

[22] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).

[23] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

[24] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra.*

[25] *Íd.*

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;

(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[26]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[27] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[28] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*. La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[29]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[30] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[31]

### - B- *REGLA 10.2 DE LAS DE PROCEDIMIENTO CIVIL DE 2009*

---

[26] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).

[27] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

[28] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).

[29] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra.*

[30] *García v. Asociación*, 165 DPR 311, 322 (2005).

[31] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

La Regla 10.2 de las de Procedimiento Civil de 2009 instituye que las defensas de hecho o de derecho contra una reclamación deben presentarse antes de una alegación responsiva[32]. Una *moción de desestimación* bajo la precitada regla es aquella que presenta la parte demandada previo a contestar la demanda solicitando que se desestime la causa de acción presentada en su contra.[33]

Dicha Regla dispone como fundamentos para la desestimación: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; o (6) dejar de acumular una parte indispensable.[34] La falta de jurisdicción constituye "una defensa irrenunciable, que puede ser planteada a petición de parte o el tribunal *motu proprio* y en cualquier etapa de los procedimientos, incluso en fases apelativas".[35]

El estándar adjudicativo al evaluar una *moción de desestimación* exige que los tribunales tomen como ciertos "todos los hechos bien alegados en la demanda y considerarlos de la forma más favorable para la parte demandante".[36] La obligación de tomar como ciertos únicamente los hechos bien alegados de la demanda supone excluir del análisis las conclusiones de derecho o las alegaciones redactadas de tal forma que su contenido resulte hipotético.[37]

Como parte de este estándar adjudicativo, los tribunales están llamados a interpretar las alegaciones de la demanda conjuntamente y de forma liberal a favor de la parte demandante, resolviendo toda duda a su favor

---

[32] 32 LPRA Ap. V, R 10.2.

[33] Véase: R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, LexisNexis, (2017), págs. 305– 306.

[34] 32 LPRA Ap. V, R. 10.2. *Cobra Acquisitions v. Mun. de Yabucoa, et al.,* 210 DR 384, 396 (2022).

[35] *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525, 539 (2019).

[36] *Blassino Alvarado v. Reyes Blassino*, 2024 TSPR 93, 214 DPR___.

[37] J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2011, T. II, págs. 529 (citado en *Asoc. Importadores de Cerveza v. E.L.A.,* 171 DPR 140, 149 (2007) (Rebollo López, opinión de conformidad)).

y concediendo el beneficio de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda.[38] Ante ello, los tribunales deberán evaluar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'".[39] En otras palabras, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Así, si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones con el descubrimiento de prueba.[40]

De esta forma, solo procederá una *moción de desestimación* cuando una demanda carece de todo mérito, o la parte demandante no demuestre tener derecho a remedio alguno bajo cualesquiera hechos y estado de derecho que pudiera probar en un juicio.[41] Esto es, no "procede la desestimación, si la demanda es susceptible de ser enmendada".[42]

### - C – *LEY DE CONDOMINIOS DE PUERTO RICO*

En Puerto Rico, los condominios sometidos al Régimen de Propiedad Horizontal están regidos por la Ley Núm. 129-2020.[43] Uno de los principios fundamentales de la citada *Ley de Condominios de Puerto Rico* es facilitar la convivencia y "garantizar a cada titular el pleno disfrute de su propiedad".[44] Cónsono con ello, nuestro más alto foro resolvió:

> Desde sus inicios, "[l]a aprobación de la Ley de la Propiedad Horizontal adelantó el propósito de armonizar el disfrute de cada apartamento por su titular y las limitaciones a ese disfrute en

---

[38] *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016).

[39] *Cruz Pérez v. Roldan Rodríguez et al.,* 206 DPR 261 267 (2021).

[40] Véase: R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta ed., San Juan, LexisNexis, 2017, pág. 307.

[41] *Cruz Pérez v. Roldan Rodríguez et al., supra; Ortiz Matías et al. v. Mora Development,* 187 DPR 649 (2013).

[42] *Ortiz Matías et al. v. Mora Development, supra.*

[43] *Ley de Condominios de Puerto Rico,* anteriormente *Ley de Condominios,* Ley Núm. 104 de 23 de junio de 1958, 31 LPRA § 1291 *et seq. (derogada).*

[44] *Consejo Titulares v. Ramos Vázquez,* 186 DPR 311 (2012) (citando a M.J. Godreau Robles, *La Nueva Ley de Condominios: Guía básica para entender el Régimen de Propiedad Horizontal según la Ley 103 del 5 de abril de 2003,* San Juan, Ed. Dictum, 2003, pág. 19); *Pérez Riera v. Con. Tit. Cond. Marymar,* 197 DPR 197, 204-205 (2017).

interés de la colectividad".[45] En otras palabras, subyace en estos preceptos la necesidad imperiosa de crear "unas reglas mínimas para el uso y disfrute de cada apartamento" que "facilit[en] la convivencia entre los titulares de un inmueble, sin que se intervenga indebidamente con los derechos individuales de los demás".[46]

El Artículo 48 de la antedicha ley instaura que el Consejo de Titulares constituye la autoridad suprema concerniente a la administración del inmueble sometido al Régimen de Propiedad Horizontal, el cual, esencialmente, está compuesto por todos los titulares. En principio, la autoridad del Consejo de Titulares sobre el inmueble se ejecuta mediante la Junta de Directores, cuyos poderes y deberes están contenidos en el Artículo 53 del estatuto que lee:

> El Director o la Junta de Directores constituye el órgano ejecutivo de la comunidad de titulares. Solo podrán ser nominados y elegidos los titulares que no adeuden dos (2) o más plazos de cuotas de mantenimiento, y/o derramas y/o multas de más de sesenta (60) días de vencidas, y/o primas del seguro matriz y además deberá mantener tal estado en sus cuentas durante el período de su incumbencia. El cuerpo directivo tendrá los siguientes deberes y facultades:
>
> **(a) Atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento del régimen y en especial lo relativo a las cosas y elementos de uso común y los servicios generales, y hacer a estos efectos las oportunas advertencias y apercibimientos a los titulares.**[47]

En definitiva, el Consejo de Titulares es la autoridad suprema del inmueble -sometido al régimen de propiedad horizontal - y goza de personalidad jurídica propia.[48] Es así como, mediante "su existencia hace viable la administración de las áreas comunes del inmueble por todos los titulares" protegiendo así los intereses de estos frente a la comunidad o terceros.[49]

- III -

En el caso de marras, **ESPLENDOR** arguyó que el foro primario erró al declarar no ha lugar su solicitud de desestimación dado que, al momento de

---

[45] *D.A.Co. v. Junta Cond. Sandy Hills*, 169 DPR 586, 597 (2006).

[46] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 218 (2012); *Junta Dir. Cond. Montebello v. Torres*, 138 DPR 150, 154 (1995).

[47] 31 LPRA § 1922y. (énfasis nuestro).

[48] 31 LPRA § 1922t.

[49] *Bravman, González v. Consejo Titulares*, 183 DPR 827, 825 (2011).

comenzar sus servicios como administrador del condominio, el reclamo sobre las filtraciones llevaba unos nueve (9) meses siendo atendido por la Junta de Directores. Además, cuestionó como podría haber una causa de acción en su contra sin que en la reclamación existiera una sola alegación de acto u omisión de su parte que causara daños.

Por su lado, los señores **GAVIN-GORBEA** coligieron, entre otras cosas, que presentaron una *Demanda Enmendada* a los fines de incluir los actos y omisiones de **ESPLENDOR.** Razonaron, además, que tales alegaciones, de probarse en su día, podrían justificar que se conceda un remedio a su favor.

Nuestro ordenamiento jurídico, así como jurisprudencia es claro e implanta que la desestimación no procede cuando una demanda es susceptible de ser enmendada dado que es la sanción más drástica o severa que puede imponer un tribunal. A nuestro juicio, si en la cotidianidad de los tribunales se imponen medidas menos severas para evitar desestimar un pleito y a su vez propiciar los pronunciamientos judiciales, resultó razonable que se les concediera a los señores **GAVIN-GORBEA** la oportunidad para enmendar sus alegaciones.[50]

Habida cuenta de que el recurso ante nuestra consideración se trata de un *Certiorari*, este Tribunal de Apelaciones debe determinar, como cuestión de umbral, si procede su expedición. Tal y como hemos expuesto, un tribunal intermedio no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que hubo un craso abuso de discreción, o actuó con prejuicio o parcialidad, o se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho

---

[50] Apéndice del *Certiorari*, págs. 286- 291. Según la *Minuta* fechada 9 de septiembre de 2024, en una de las inspecciones se halló que había una tubería de agua fría que alimentaba el inodoro de la residencia de la señora **MARRERO PAGÁN.** Esta situación fue corregida y el techo se secó. Por tanto, se tornó académico el petitorio de *injunction* preliminar. Así las cosas, quedaron pendientes las causas de acción sobre los posibles daños y la compensación, si alguna, que pudieran concederse en un juicio plenario. Posteriormente, el 23 de septiembre de 2024, se prescribió *Resolución y Orden* en la cual se le concedió cinco (5) días para enmendar la *Demanda*.

sustantivo, y nuestra intervención en esa etapa evitará un perjuicio sustancial.

Colegimos que la etapa del procedimiento en que se presenta este recurso de *Certiorari* no es la más propicia para nuestra intervención. **ESPLENDOR** tampoco ha demostrado que el foro *a quo* actuó con pasión, prejuicio, parcialidad o que incurrió en error manifiesto. En conclusión, nada en el expediente nos convenció para utilizar nuestra función revisora en esta etapa de los procedimientos.

- **IV**-

Por los fundamentos antes expuestos, ***denegamos*** la expedición del auto de *certiorari* incoado el 15 de octubre de 2024 por **ESPLENDOR**.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
