ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| YOLANDA MARÍN<br><br>Peticionaria<br><br><br>V.<br><br><br>CONSEJO DE TITULARES COND. GREEN VILLAGE<br><br>Recurridos | KLRA202500318 | Revisión Judicial procedente Departamento de Asuntos del Consumidor, Oficina Regional de San Juan<br><br>Querella Núm.: C-SAN-2025-0020640<br><br>Sobre:<br><br>Condominios |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 6 de agosto de 2025.

Comparece ante nos la señora Yolanda Marín Santiago ("Sra. Marín" o "Recurrente") y nos solicita que revoquemos la Resolución emitida el 8 de abril de 2025 por el Departamento de Asuntos del Consumidor ("DACO" o "Agencia").

Por los fundamentos que exponemos a continuación, se *confirma* la determinación recurrida.

-I-

A continuación, exponemos los hechos pertinentes a la controversia de epígrafe.

El 28 de marzo de 2024, la Asociación de Condómines Green Village ("Junta" o "Recurrida") le envió una carta a la Sra. Marín con el propósito de informarle sobre el balance que adeudaba, el cual ascendía a $1,376.60. A fin de atender la situación, la Recurrida mostró su interés en sostener una reunión

con la Sra. Marín a fin de auscultar alternativas para atender la situación. En la carta, la Junta le solicita que provea tres (3) fechas viables para celebrar la reunión.

Ante el silencio de la Recurrente, el 29 de mayo de 2024, la Junta le cursó una misiva indicándole que tenía un balance ascendente a $1,578.60. Además, la Junta le indicó que le enviaron dos comunicaciones previamente para informarle sobre la deuda. Finalmente, le indicaron que, de no recibir el pago total de la deuda, el 13 de junio de 2024 le cortarían los servicios básicos de agua y energía eléctrica en su unidad de vivienda.[1] Llegado el 13 de junio de 2024 sin haber recibido el pago de la deuda, la Junta procedió al corte del servicio eléctrico[2]. Ese mismo día, el hijo de la Recurrente, el Sr. Santos hizo la reconexión del servicio de manera ilegal.[3] Al día siguiente, la Recurrente presentó una carta ante la Junta en la que incluyó dos giros que sumaban la cantidad de $552. Según surge de la misiva, su intención era aportar a la deuda.[4] Así las cosas, el 20 de junio de 2024 la Junta presentó una segunda carta dirigida a la Recurrente indicando que la deuda había ascendido a $4,753.80 como consecuencia de la reconexión ilegal. Además, se hizo constar la devolución de los dos giros, debido a que no contenían el total de la deuda.[5] Posteriormente, el Sr. Santos remitió una carta a la Junta expresando que ni él ni

---

[1] Véase recurso de revisión administrativa, Apéndice 20.
[2] *Íd.*, Apéndice 17.
[3] *Íd.*, a la pág. 3.
[4] *Íd.*, Apéndice 18.
[5] *Íd.*, Apéndice 17.

su madre contaban con la cantidad total para saldar la deuda.[6]

El 8 de agosto de 2024, la Recurrida emitió un estado de cuenta reflejando la nueva suma adeudada de $6,853.20.[7] Meses después, el 22 de enero de 2025, la Junta envió otra carta informando que la deuda alcanzaba la cantidad de $7,877.20 y que, de no recibir el pago total de la deuda en o antes de las 12:00pm del 6 de febrero de 2025, procederían a cortar los servicios de agua y energía eléctrica.[8] Así, el 4 de febrero de 2025, la representación legal de la Recurrente le cursó una misiva a la Junta solicitando una reunión entre las partes e informando que la Recurrente podía abonar la cantidad de $2,056.00.[9] Al día siguiente, 5 de febrero de 2025, la Recurrente presentó una *Querella Urgente*[10] ante DACO. En síntesis, la Sra. Marín alegó que la penalidad impuesta resulta excesiva y desproporcionada. También alegó que "*la reconexión del servicio se efectuó en un contexto de emergencia y de buena fe*".[11] Finalmente, solicitó que la Agencia ordenara "*la paralización inmediata del corte de servicio de luz de la querellante*".[12]

El 6 de febrero de 2025, la Junta procedió con el corte del servicio eléctrico. Como consecuencia de lo anterior, en esa misma fecha, la Recurrente envió una

---

[6] *Íd.*, Apéndice 19. La misiva, fechada el 2 de junio de 2024, hace referencia a la cantidad de $4,753.80, sin embargo, la deuda ascendió de $1,578.60 a $4,753.80 posterior a la reconexión ilegal del 13 de junio. La Recurrente advino en conocimiento del aumento de la deuda el 20 de junio de 2024. Por lo tanto, consideramos que existe un error en la fecha de la carta que cursó el Sr. Santos.
[7] *Íd.*, Apéndice 15.
[8] *Íd.*, Apéndice 14, pág. 70.
[9] *Íd.* Apéndice 13, págs. 67-68.
[10] *Íd.*, Apéndice 12, págs. 62-64.
[11] *Íd.*, Apéndice 12, pág. 63.
[12] *Íd.*

*Moción Urgente en Solicitud de Orden*[13]. En esa ocasión, alegó ser una persona de sesenta y dos (62) años con padecimientos de salud, por lo que solicitaba urgentemente la reconexión del servicio eléctrico. Así las cosas, el 7 de febrero de 2025, DACO emitió una *Notificación y Orden*[14] declarando No Ha Lugar la moción y señaló que "*[l]a solicitud de reconexión no cumple con el criterio médico establecido en el Artículo 59 de la Ley de Condominios, sobre utilización de algún equipo para sostener la vida*".[15]

El 11 de febrero de 2025, la Recurrente radicó ante DACO una *Moción Urgente en Solicitud de Señalamiento de Vista Administrativa*[16]. El 11 de marzo de 2025, la Agencia emitió una *Orden de Señalamiento de Vista Administrativa Mediante Videoconferencia*[17] a llevarse a cabo el 10 de abril de 2025. Posteriormente, el 4 de abril de 2025, la Agencia presentó una moción asumiendo representación legal y en solicitud de desestimación sumaria al amparo de la Regla 11[18] del Reglamento de procedimiento adjudicativo.[19] El 7 de abril de 2025, la Recurrente se opuso a la solicitud de desestimación sumaria.[20] Al día siguiente, DACO emitió una *Resolución*[21] desestimando la Querella y ordenando a la Recurrente al pago de

---

[13] *Íd.*, Apéndice 10, págs. 50-52.
[14] *Íd.*, Apéndice 9, pág. 48.
[15] *Íd.*
[16] *Íd.*, Apéndice 7, págs. 44-45.
[17] *Íd.*, Apéndice 6, págs. 40-42.
[18] La Regla lee como sigue: "El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.
[19] *Íd.* Apéndice 5, págs. 25-29.
[20] *Íd.*, Apéndice 3, págs. 16-18
[21] *Íd.*, Apéndice 2, págs. 7-14.

$1,500.00 por concepto de honorarios de abogados, por temeridad.

Inconforme con la determinación de la Agencia, el 17 de abril de 2025, la Recurrente presentó una *Moción de Reconsideración*, sobre la cual DACO no se expresó. Ante la ausencia de determinación por parte de la Agencia, una vez cumplidos los términos correspondientes, el 30 de mayo de 2025, la Sra. Marín acudió ante nos mediante recurso de revisión e hizo los siguientes señalamientos de error:

**ERRÓ EL DACO EN SU RESOLUCIÓN EN LA APLICACIÓN DEL ART. 59. DE LA LEY DE PROPIEDAD HORIZONTAL Y LA RAZONABILIDAD DE LA SANCIÓN. EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR (DACO) INCURRE EN ERROR AL INTERPRETAR LA TRIPLE PENALIDAD COMO INAPELABLE.**

**ERRÓ EL DACO AL NO PERMITIR QUE LA QUERELLANTE PRESENTASE SU PRUEBA A TRAVÉS DE UNA VISTA ADMINISTRATIVA LO CUAL LE VIOLÓ EL DEBIDO PROCESO DE LEY.**

**ERRÓ EL DACO EN SU IMPOSICIÓN DE SANCIONES POR TEMERIDAD SIN HABER DADO UNA VISTA PARA CONCIDERAR [SIC] LOS HECHOS RECLAMADOS.**

-II-

**A. Deferencia administrativa**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico[22] ("LPAUG") autoriza la revisión judicial de las decisiones de las agencias administrativas. Es un principio establecido que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, debido a que estas cuentan con vasta experiencia y pericia para atender los asuntos que le

---

[22] Ley Núm. 38 de 30 de junio de 2017, según enmendada.

han sido delegados por la Asamblea Legislativa.[23] Por lo tanto, las determinaciones de las agencias suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas.[24] Sin embargo, dicha norma no es absoluta. A tales efectos, nuestro más alto foro ha enfatizado que no podemos imprimirle un sello de corrección a una determinación, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. Nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta [sic] cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.[25]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el

---

[23] *Hernández Feliciano v. Municipio de Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *O.E.G. v. Martínez Giraud*, 2022 TSPR 93, 210 DPR ___ (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[24] *Íd.; Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).
[25] *Íd.; Véase*, además, *Super Asphalt v. AFI y otro*, supra, a la pág. 819.

criterio de razonabilidad.[26] Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción.[27] La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas.[28] Nuestro máximo foro ha expresado que esta intervención "*debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley.*"[29] Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[30]

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad.[31] No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas

---

[26] *O.E.G. v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, a la pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, a la pág. 127.
[27] *Íd.*
[28] *O.E.G. v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217.
[29] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 36.
[30] *Íd.*; *O.E.G. v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra.
[31] *Véase* Sección 4.5 de la LPAUG, 3 LPRA § 9675; *Rolón Martínez v. Supte. Policía*, supra, a la pág. 36; *Torres Rivera v. Policía de PR*, supra, a la pág. 627.

leyes particulares que administra.[32] Ahora bien, nuestro más alto foro ha establecido que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.[33]

Finalmente, el Tribunal Supremo ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "*la deferencia judicial al expertise administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia.*"[34]

**B. Ley de Condominios de Puerto Rico**

La Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como *Ley de Propiedad Horizontal*, se aprobó con el fin de establecer un régimen jurídico que facilitara la vida en convivencia.[35] Esta ley ha sido enmendada en múltiples ocasiones. Los proyectos de enmiendas más fundamentales fueron introducidos mediante la Ley Núm. 103 de 5 de abril de 2003,

---

[32] *Íd.*
[33] *Torres Rivera v. Policía de PR*, supra, a las págs. 627-628; *O.E.G. v. Martínez Giraud*, supra, a la pág. 90.
[34] *O.E.G. v. Martínez Giraud*, supra, a la pág. 91.
[35] *Pérez Riera v. Con. Tit. Cond. Marymar*, 197 DPR 197, 204 (2017).

conocida como *Ley de Condominios*, según enmendada[36], y la Ley Núm. 129 de 16 de agosto de 2020, según enmendada, conocida como *Ley de Condominios de Puerto Rico*, quedando así derogada la ley anterior con sus respectivas enmiendas[37].

No obstante, tanto la nueva Ley de Condominios de Puerto Rico, como su ley predecesora, establecen la obligación de todo titular de un apartamento de contribuir con los gastos comunes para el adecuado sostenimiento del inmueble.[38] Como regla general las cuotas de mantenimiento correspondientes se fijarán con arreglo al porcentaje de participación establecido a su apartamento en la escritura de constitución del régimen.[39] Estas cuotas que los titulares vienen obligados a satisfacer son para preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garantizar el buen funcionamiento del régimen al que está sujeto el inmueble.[40]

A su vez, tanto la ley anterior, como la nueva *Ley de Condominios de Puerto Rico*, supra, reconocen que el pago diligente de las cuotas de mantenimiento es esencial para una sana administración y el funcionamiento adecuado de los elementos comunes.[41] Por tal razón, varias de las disposiciones que rigen la vida comunal buscan desalentar el atraso en el pago de las cuotas de mantenimiento y fomentar la diligencia respecto a los asuntos relacionados con la administración y conservación de aquellos elementos

---

[36] 31 LPRA § 1291 et. seq.
[37] 31 LPRA § 1921 et. seq.
[38] *D.A.Co v. Cond. Castillo del Mar*, 174 DPR 967, 973 (2008); Además, véase Artículoo 59 de la Ley 129-2020, 31 LPRA § 1923d.
[39] *Id.* Véase, además*,* 31 LPRA § 1291m y 31 LPRA § 1923a.
[40] *D.A.Co v. Cond. Castillo del Mar,* 174 DPR 967, 973 (2008).
[41] *Id.* pág. 975.

comunes.[42] Así, al amparo de la ley anterior, se autorizaba al Consejo de Titulares a aprobar, mediante enmienda al reglamento del condominio, una penalidad de 10% a los titulares que no hubieren realizado el pago correspondiente luego del término para ello, así como otras penalidades adicionales.[43] Asimismo, disponía para:

> Ordenar que se suspendan los servicios recibidos a través o por medio de los elementos comunes generales, incluidos los servicios de agua, gas, electricidad, teléfono y/o cualquier otro servicio similar a éstos, a aquellos condóminos morosos que, al no pagar sus cuotas de mantenimiento o su parte proporcional del seguro comunal, se sirven graciosamente de los elementos a cuyo mantenimiento no contribuyen como les corresponde, **adeudan dos (2) o más plazos consecutivos de sus cuotas**. Sin embargo, ante el incumplimiento del primer plazo **la Junta de Directores o el Director enviará una notificación para informar de la intención de suspender los servicios al vencer el segundo plazo consecutivo de incumplimiento**, según el procedimiento determinado por el Consejo de Titulares y dispuesto en el Reglamento. [44]

> Por su parte, y en lo aquí pertinente, la nueva

Ley de Condominios, supra, establece que:

> La Junta de Directores podrá ordenar la suspensión del servicio de agua potable, electricidad, gas, teléfono, así como los servicios de transmisión de voz, video y data, y/o cualquier otro servicio similar, cuando el suministro de éstos llega por medio de instalaciones que constituyen elementos comunes generales del inmueble, **a aquellos titulares que adeuden dos (2) o más plazos de cuotas, cuotas especiales, derramas, multas con pago vencido de sesenta (60) días o más, o alguna prima vencida del seguro comunal** por cualquiera de los apartamentos de los que sea titular. No se suspenderá ningún servicio, a menos que medie una notificación al titular por los medios establecidos en esta Ley, la cual deberá realizarse con no menos de quince (15) días de anticipación.

---

[42] *Id*. pág. 974.
[43] *Id*. págs. 974-975.
[44] 31 LPRA § 1293b(i). Énfasis suplido.

…

No se restituirán dichos servicios hasta el pago total de lo adeudado o del cumplimiento del plan de pago.

El titular u ocupante a quien se le hayan suspendido cualesquiera de los servicios comunales, según lo dispuesto en este capítulo, que sin la autorización de la Junta o del Agente Administrador, por sí o a través de tercero se reconecte a dichos servicios, o de cualquier otra forma se sirva de las facilidades comunes de las cuales ha sido privado, **incurrirá en una penalidad ascendente al triple de las sumas adeudadas**, incluidos el principal y los intereses, sin perjuicio de las acciones civiles, administrativas, o criminales que procedan.[45]

Por otro lado, el Artículo 65 de la nueva Ley de Condominios dispone lo siguiente:

En el caso de los titulares sean dueños [sic] de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador.

Para todo tipo de impugnación se tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.

…

El titular que quiera impugnar una acción u omisión de la Junta de Directores, del Administrador Interino, del Agente Administrador o un acuerdo del Consejo de Titulares tendrá que demostrar que no tiene ningún tipo de deuda con el Consejo de Titulares y que entregó copia del documento mediante el cual adquirió su apartamento a la Junta de Directores. Será excepción al requisito de no deuda, cuando la impugnación sea para cuestionar la deuda que alegadamente tiene.

---

[45] Art. 59, Ley Núm. 129-2020. Énfasis suplido.

…

El foro con jurisdicción en el que se diluciden las querellas o acciones de impugnación, le impondrá a la parte que hubiese procedido con temeridad el pago de costas y honorarios de abogados.[46]

-III-

En el caso de autos, la Recurrente alega que DACO erró al interpretar que la triple penalidad es inapelable y al no permitir que presentara prueba en una vista administrativa. Además, señaló que erró la Agencia al haber impuesto sanciones por temeridad sin la celebración de una vista. Luego de examinar los documentos que obran en el expediente, concluimos que DACO no cometió ninguno de los errores señalados.

Primeramente, debemos recordar que, como indicamos en el acápite II de esta Sentencia, las decisiones administrativas están acompañadas de una presunción de legalidad y corrección y es la parte recurrente quien tiene la obligación de derrotarla.

Según se desprende de los autos del caso, la cuota de mantenimiento en el condominio Green Village es de $168.00 mensuales. Ante el reiterado incumplimiento de la Recurrente con dichas cuotas, la Junta intentó comunicarse en varias ocasiones con la Sra. Marín, sin embargo, no tuvo éxito. El 29 de mayo de 2024 la Junta le remitió una misiva a la Sra. Marín indicándole que adeudaba la suma de $1,578.60, cantidad que excede los plazos establecidos por ley. Además, le indicó que, de no hacer el pago en su totalidad, estaría suspendiendo el servicio eléctrico el 13 de junio de 2024. Ante la ausencia de pago, la

---

[46] Íd., Art. 65.

Junta procedió a la suspensión del servicio de energía eléctrica, tal y como dispone la legislación.

Tal y como surge del expediente de epígrafe, el hijo de la Sra. Marín procedió con la reconexión del servicio eléctrico sin estar autorizado para ello. La Ley de Condominios es clara en que, ya sea el titular o un tercero quien reconecte el servicio, dicha actuación, resultará en una penalidad ascendente al triple de las sumas adeudadas. Ante tal escenario de ilegalidad, la Junta procedió a imponer la multa correspondiente, actuando dentro del marco que provee la reglamentación aplicable.

Por su parte, la Ley de Condominios provee para que el foro con jurisdicción, en este caso DACO, le imponga el pago de costas y honorarios de abogados a una parte que proceda con temeridad. Nuestro más alto foro ha definido la temeridad como "*una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exhorbitante* [sic] *para su peculio*"[47].

En el caso de autos, la Sra. Marín no contestó las múltiples comunicaciones que le envió la Junta. Además, permitió que su hijo reconectara el servicio eléctrico de manera ilegal, conociendo las consecuencias que ello tendría. A pesar de lo anterior, presentó una Querella solicitando que se

---

[47] *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987).

ordenara la paralización inmediata del corte de servicio eléctrico. Resulta evidente que la actuación de la Sra. Marín fue temeraria, en la medida en que afectó el buen funcionamiento y la administración de la justicia sometiendo a DACO a un proceso judicial que lo expuso a gastos innecesarios. A tenor con lo anterior, concluimos que la Agencia actuó correctamente al imponerle sanciones económicas en concepto de honorarios de abogado, por temeridad.

-IV-

Por los fundamentos que anteceden, se **confirma** la Resolución emitida por DACO.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones